Hand-Delivered

FILED
CHARLOTTE, NC

JAN 2 6 2024

US DISTRICT COURT
WESTERN DISTRICT OF NC

IN THE COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA

**Plaintiff,**

**K.L, individually,
and as the legal guardian of A.B. and Z.B**

v ____

Gaston County School District
**for for the Education of Homeless Students,
North Carolina Department of Public Education**

Complaint No. 3:24-cv-94-RJC

### REQUEST FOR PRELIMINARY INJUCTION AND RESTRAINING ORDER

1.  Plaintiffs K.L.(g), A.B., and Z.B. (collectively, "Plaintiffs") file this Petition Pro Se against Defendants Lisa Phillips, State Coordinator for the Education of Homeless Children and North Carolina Department of Public Instruction and the Gaston County School District.

### INTRODUCTION

2.  This lawsuit seeks to remedy the failure of the education system in North Carolina and Gaston County School District to provide A.B. and A.B., homeless children, with the substantive and procedural protections they are entitled to under the Stewart B. McKinney- Vento Homeless Assistance Act, 42 U.S.C. §§ 11431-11435 (the "McKinney- Vento Act") and North Carolina Education Law § 115C-1.

3.  The Plaintiffs in this case are K.L.(g) and her homeless children, A.B. and Z.B. (collectively "Plaintiff Children"), who live in Gaston County.[1] Defendants have denied Plaintiff Children enrollment in their schools of origin in violation of the requirements

1

of the McKinney-Vento Act, Dispute Resolution Process for Homeless Students N.C.G.S § 115C-12; 115C- 366, and the promulgated thereunder. The consequence of the Defendants' conduct is that homeless children are being turned away at the schoolhouse door midyear, significantly impacting their educational development and their opportunity to participate in the decision- making process regarding the provision of a free and appropriate education. Without relief, Plaintiff Children will be denied the educational benefits Congress sought to provide children like them in enacting the McKinney-Vento Act. See 42 U.S.C. § 11431.

2.      As set forth more fully herein, Plaintiffs allege that these policies and practices violate state and federal laws. Plaintiffs therefore seek injunctive relief compelling the Defendants to maintain Plaintiffs' enrollment in their schools of origin pending the outcome of administrative remedies that Plaintiffs are currently pursuing.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), on the ground that this action arises under the laws of the United States.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), on the ground that Defendant Gaston County School District is located in Gaston County, North Carolina.

5.      Plaintiffs have been deprived of their federal statutory rights and thus bring this action pursuant 42 U.S.C. § 1983.

6.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims of violations of North Carolina Education Law and the North Carolina

2

Constitution, Article IX.

7.      There is an actual controversy between the Plaintiffs and the Defendants within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure Rule 57.

## PARTIES

**K.L.(g), A.B., and Z.B.**

8.      K.L.(g) is the legal guardian of A.B. and Z.B., who attends school in Gaston County School District.

9.      Plaintiffs are all citizens of the United States and at all times mentioned herein were and are living in Gaston County.

**Lisa Phillips State Coordinator for the Education of Homeless Children and the North Carolina Department of Public Instruction**

10.     Lisa Phillips as State Coordinator for the Education of Homeless Children and the North Carolina Department of Public Instruction, is the North Carolina state official responsible for educational matters affecting Gaston County School District and for the general supervision and management of the Gaston County Public Schools. State Coordinator Phillips is also officially responsible for ensuring compliance with federal, state, and local laws governing this system.

11.     State Coordinator Phillips is directly responsible for granting or denying stays of exclusion from North Carolina public schools pending the outcome of a dispute under the

3

McKinney Vento Act.

12.    Lisa Phillips a state officer, was at all relevant times acting or purporting to act under color of state law.

**The School District Defendant**

13.    Upon information and belief, Defendants Gaston County School District (the "District") is a municipal corporation duly organized and existing under North Carolina State Education Law and is a Local Educational Agency ("LEA") under the McKinney-Vento Act.

14.    The District establishes local rules and practices concerning enrollment, transportation, and education of children within its district, including homeless children.

## FACTUAL BACKGROUND

15.    Plaintiffs entered into a lease with Progress Residential on October 27, 2021 for a residence located at 3772 Catawba Creek Drive, Gastonia, North Carolina. The lease stated the residence was equipped with central air conditioning.

16.    However, once warmer weather approached, Plaintiff notified landlord the central air conditioning was not working. Temperatures inside the house reached 90 degrees. The landlord failed to repair the central air conditioning as required by North Carolina Landlord and Tenant Statues until August 10, 2023.

17.    Plaintiffs did not have adequate housing from May 2023 until August 10, 2023.

18.    On August 16, 2023, the family's electric service was disconnected by Duke Energy of the Carolina at their rental residence located at 3772 Catawba Creek Drive, Gastonia, North Carolina.

4

Plaintiffs were without adequate housing for 10 days when then the electric was reconnected.

19.     At the beginning of September 2023, Plaintiff received eviction notice from Progress Residential.

20.     Plaintiff and landlord were able to reach an agreement. Plaintiff was required to vacate residence at 3772 Catawba Creek Drive by October 10, 2023.

21.     Plaintiff was unable to find affordable housing by the October 10, 2023 deadline.

22.     Residence was not vacated until October 18, 2023. On October 18, 2023, Plaintiff moved everything that would fit of their belongings into a U-Haul truck. Any items that would not fit were either left in the house at 3772 Catawba Creek Drive, put into storage at the Plaintiffs' mother's apartment or stored in their vehicles.

23.     On or about October 18, 2023, Plaintiff notified New Hope Elementary School where Z.B. was in attendance, he would now be a car rider in the afternoons. school secretary, Lori Hammonds questioned him about his residence.

24.     On November 9, 2023, Plaintiff received a text message from Ali Rowe, School ocial Worker at Cramerton Middle School where A.B. was in attendance. Plaintiff attempted toc all and speak with her and explain what the family situation. She was unsuccessful.

25.     On November 13, 2023, Plaintiffs went to the Office of Student Assignments and met with Director Teri Surbeck. Plaintiff was instructed she must contact GCS social workers in order to discuss school assignment of children. K.L. explained the situation with the previous landlord and they had stayed with her mother until she had received a lease violation letter from her apartment manager. Director Surbeck made a comment about the energy drink K.L. was drinking and how it was expensive and she herself could not afford to buy one.

26.     Plaintiff contacted Cramerton Middle School Social Worker Meg Richards. Ms. Richards told K.L. her homelessness was voluntary because she reached an agreement with the landlord. K.L. explained to Meg Richards that she is a disabled Veteran and only receives disability

5

income. Plaintiff also explained the landlord - Progress Residential did not intend to renew the lease which expired on October 27, 2023, with the Plaintiff.

27.     On November 1, 2023, Plaintiffs obtained housing at 2334 Atticus Ave, Gastonia, North Carolina. However, the residence is out of budget for K.L. and she is currently at risk of being evicted. At the time of move-in, it was the only option available with no required deposit that would provide housing for the family.

28.     On or about November 17, 2023, Plaintiffs reached out to SchoolHouse Connection and was referred to a LEA Justine Bartlett and State Coordinator Lisa Phillips.

29.     K.L. spoke to Justine Bartlett and explained they had been served with eviction papers, went to court, given a move out date, squatted at the residence, doubled up with regular, and adequate nighttime residence" will be considered homeless. *Id*. § 11434a(2)(A). Congress specifically studied the housing arrangements of homeless families and concluded that it was essential to the functioning of the McKinney-Vento Act that families "doubling up" with others in temporary housing arrangements must be included within the definition of homeless. Thus, in defining what it means to "lack a fixed, regular, and adequate nighttime residence," the McKinney-Vento Act expressly includes "children and youths who are sharing the housing of other ersons due to loss of housing due to economic hardship, or a similar reason." *Id*. § 1434a (youths." *Id*. § 11431(1).

29.     The McKinney-Vento Act also mandates that if the State enacts "regulations, practices, or policies that may act as a barrier to the enrollment, attendance, or success in school of homeless children and youths," it must "review and undertake steps to revise such laws, regulations, practices, or policies to ensure that homeless children and youths are afforded the same free, appropriate public education as provided to other children and youths." *Id*. § 11431(2). The McKinney-Vento Act imposes the same obligations on LEAs. *Id*. § 11432(g)(7).

30.     The McKinney-Vento Act specifically requires that States ensure that the LEAs provide an expeditious process of resolving disputes affecting the educational rights of

6

homeless children. *Id.* § 11432(g)(3)(E)(iii).

31.     Moreover, the McKinney-Vento Act states that if a dispute arises over school enrollment, the homeless student "*shall* be immediately admitted to the school in which enrollment is sought, pending resolution of the dispute." *Id.* § 11432(g)(3)(E)(i) (emphasis added).

32.     The McKinney-Vento Act requires that "[e]ach State educational agency shall ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education . . . as provided to other children and youths." 42 U.S.C.§ 11431(1).

33.     The McKinney-Vento Act also mandates that if the State enacts "regulations, practices, or policies that may act as a barrier to the enrollment, attendance, or success in school of homeless children and youths," it must "review and undertake steps to revise such laws, regulations, practices, or policies to ensure that homeless children and youths are afforded the same free, appropriate public education as provided to other children and youths." *Id.* § 11431(2).

**North Carolina General and Uniform System of Schools § 1151C-1**

34.     North Carolina Genera and Uniform System of Schools § 1151C-1 requires the Defendants to provide for the education of homeless children in North Carolina. Pursuant to statutory authority, North Carolina enacted regulations which provide for the education of children in North Carolina. The North Carolina Homeless Education Program is

dedicated to ensuring all children and youth experiencing homelessness have access to the public education to which they are entitled under the McKinney-Vento Act. However, Lisa Phillips is the state official over the program.

35.     Lisa Phillips has blocked A.B. and Z.B. from attending their school of origin and

7

McKinney-Vento protections. Defendant Lisa Phillips s State Coordinator for the Education of Homeless Children, North Carolina Department of Public Instruction, is responsible for enforcing these regulations.

36. North Carolina Homeless Education Program and McKinney Vento U.S.C. § 1143-1 mandates that a homeless child's family or an unaccompanied youth may choose whether the child will attend school where the 0family or child lived before becoming homeless (the "school district of origin") or where he or she currently lives (the "school district of current location"), and that the school district must immediately admit and enroll the homeless child

## The Defendants' Duties Under Federal and State Law

37. Under the aforementioned laws, Lisa Phillips is obligated, in relevant part, to undertake, supervise, or ensure the State's compliance with the following: prepare and carry out an adequate state plan for implementing the McKinney- Vento Act and ensure the LEAs' compliance with the plan; ensure that the local social service agency complies with the provisions of North Carolina Homeless Education Program and its regulations in providing education and transportation services to homeless children and youth; review and revise policies that may act as barriers to and provide services that enable the enrollment, attendance, and success in school of each homeless child in North Carolina, including policies related to transportation, records requirements, and residency requirements; provide procedures for the prompt resolution of placement and transportation assistance disputes affecting homeless children in North Carolina; identify and address problems affecting the education of homeless children in North Carolina; ensure that policies and practices are adopted by the State and LEAs to ensure that homeless children in North Carolina are not

8

stigmatized or isolated; ensure that the LEAs provide written notice to homeless school-age children and the parents or legal guardians of such children of any adverse action affecting their placement in schools, a fair opportunity to challenge such decisions, including the notice of the availability of an ombudsperson, and a process of resolving the dispute; ensure the LEAs' compliance with state law and regulations; ensure that the LEAs locate and provide educational services to all eligible children in North Carolina; ensure that homeless youths and youths separated from the public schools are identified and accorded equal access to appropriate secondary education and support services; and identify homeless children and youth and assess their special needs.

38.    Under the same laws discussed above, the School District Defendants are obligated to: make available to each homeless child and family who seeks to enroll (or continue the child) in school the designation form provided by the liaison; review the designation form to assure that it has been completed; where the school district of origin is designated, the child shall be entitled to return to the school building where previously enrolled; where the school district is the school district of current location, (1) the child shall be admitted to the school, (2) the homeless child shall be treated as a resident for all purposes, and (3) the LEA must make a written request to the school district where the child's records are located for a copy of such records and forward the designation form to the commissioner and the school district of origin if applicable; where a homeless child is not entitled to receive transportation pursuant to (4) from the Department of Social Services or from the Division for Youth, the child shall be transported by the designated school district; establish policies and procedures to ensure compliance with the provisions of North Carolina Homeless Education Program and its regulations, and review and revise any local regulations, policies, or practices that may act as barriers to the enrollment or attendance of homeless children in school or their receipt of comparable services as defined in Part B of Title VII of the McKinney-Vento Act; and

9

## Defendants' Violations of Their Statutory and Other Duties

39.     Defendants have failed to revise their policies and practices, which create a barrier to the enrollment, attendance, and success of homeless youths, and have failed to ensure that LEAs revise their policies and practices regarding education of homeless children.

40.     Defendants do not have a stay procedure whereby homeless children such as Plaintiffs may be allowed to attend their schools of origin pending the final outcome of dispute resolution.

41.     Denial of stay disrupts a child's education because if the final appeal is successful, a child will be asked to return to the school of origin months later. This essentially moots the appeal process.

42.     Justine Bartlett, Homeless Laison, Gaston County School District, failed to provide services as outlined in the LEA Liaison duties and responsibilities. Best practices including a housing questionnaire and additional investigation was not conducted. Breakdowns in the outlined support occurred throughout the process.

43.     Defendants have refused to recognize that Plaintiffs became homeless; that is, lacking "a fixed, regular, and adequate nighttime residence."

44.     Defendants have refused to allow Plaintiffs to remain enrolled in their schools of origin.

45.     Defendants have refused Plaintiffs' stay request pending the outcome of Plaintiffs' appeal.

46.     Defendants have refused to allow Plaintiffs to submit a hardship transfer.

47.     Defendents have refused to allow Plaintiffs to submit an extenuating circumstance transfer as outlined in the Student Assignments Policy, Gaston County Schools, Gaston County School Board Policy.

10

48.  Defendants have refused or failed to provide Plaintiffs their full rights and entitlements the law.

## Injury to Plaintiffs

49.  As set forth above, as a result of Defendants' policies and practice, Plaintiffs have suffered and continue to suffer irreparable harm.

50.  Plaintiff Children A.B. and Z.B. are denied protection under the McKinney-Vento Act them to continued enrollment in the schools of their origin and are being forced to be out of school temporarily midway through the school year.

51.  Plaintiff Child A.B. was removed from her middle school cheer team.

52.  Additionally, Teri Surbeck, Director, Student Assignments K.L. as well as forcing enrollment of Plaintiff Child Z.B. to remove him from his school of origin.

53.  Plaintiffs' have been victims of harassment since notifying Plaintiff child Z.B.'s school of origin he would be a car rider from October 2023 to approximately January 2024.

54.  Plaintiffs' injuries result from Defendants' failure to comply with the McKinney- Vento Act.

55.  Plaintiffs have no adequate remedy at law.

56.  Office of Student Assignments, Gaston County School District, Teri Surbeck has forced removal of A.B. and Z.B from their school or original while Plaintiff K.L. appeals to this court.

## CAUSES OF ACTION

## COUNT 1

## VIOLATIONS OF THE MCKINNEY-VENTO ACT

57.  Plaintiffs hereby repeat and incorporate by reference each of the allegations in the foregoing

11

paragraphs set forth above.

58.    The processes established under NCHEP, and enforced by State Coordinator Phillips which lack a stay while pursuing an appeal and for seeking to keep children such as A.B. and Z.B. are unnecessarily cumbersome and cannot reasonably be complied with by homeless families such as Plaintiffs.

59.    In addition, on information and belief, and under State Coordinator Phillips authority, NCHEP as distributed to districts throughout the State, such as Gaston County School District, incorrect information about the federal definition of homelessness under the McKinney-Vento Act and their duties to immediately enroll homeless students and maintain their enrollment throughout the duration of any dispute process. As a result, homeless liaisons that the school districts are required to employ to assist homeless families such as the Plaintiff family have been unable to provide those families the assistance and direction the law requires.

60.    By allowing no stay of the disenrollment order, appeals process imposes special burdens on such families. Most families proceed through the appeals process *pro se*, but their petitions are contested by lawyers suggesting evidentiary burdens, akin to those in seeking temporary injunctions, State Coordinator Phillips accepts, promulgates, and uses to deny enrollment to homeless students pending the final resolution of their appeals. In fact, the issue of a stay should never be raised, as the students are entitled to enrollment throughout the dispute resolution process.

61.    Because they will be denied the opportunity to keep their children in the school of their choice pending an appeal, those families are essentially forced to acquiesce in the decision of the school districts to terminate enrollment. The alternative—to permit successive disruptions of a homeless child's education—is unacceptable to the overwhelming majority of homeless families. Without relief with respect to the stay decision—which is effectively dispositive here— Plaintiffs will effectively be denied an

12

appeal.

62.     Defendants have failed to address the impediments to enrollment caused by residency and record requirements in violation of 42 U.S.C. § 11432(g)(1)(F), have failed to develop, "review, [and] revise policies to remove the barriers to the enrollment and retention of homeless children and youth" in violation of 42 U.S.C. § 11432(g)(1)(I), and have failed to ensure homeless students' right to be "immediately admitted to the school in which enrollment is sought, pending resolution of the dispute" in violation of 42 U.S.C. § 11432(g)(3)(E)(i).

63.     Defendants have failed to "review and revise any policies that may act as barriers to the enrollment of homeless children and youth in schools," as required under 42 U.S.C. § 11432(g)(6) and (9).

64.     Defendants have violated the rights of the Plaintiffs under the McKinney-Vento Act, 42 U.S.C. §§ 11431-11435.

## COUNT II

## VIOLATIONS OF THE NORTH CAROILNA HOMELESS

## EDUCAITONPROGRAM

65.     Plaintiffs hereby repeat and incorporate by reference each of the allegations in the foregoing themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

66.     Plaintiffs constitute homeless children as defined in North Carolina State Board of Education § 16 NCAC 06H.0114 Dispute Resolution Process for Homeless Students – Definitions, as they lack a "fixed, regular, and adequate nighttime residence."

67.     Plaintiffs have been denied the right to attend a public school in the "school district of origin" as that term is defined in Dispute Resolution Process N.C.G.S.§ 115C-12 definitions.

13

## COUNT III

## VIOLATIONS OF 42 U.S.C. § 1983

68.     Plaintiffs hereby repeat and incorporate by reference each of the allegations in the foregoing paragraphs set forth above.

69.     By implementing and authorizing the policies and practices pursuant to which Plaintiffs are denied access to public education in the District, Defendants have deprived, and will continue to deprive, Plaintiffs of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States in violation of 42 U.S.C. § 1983 and of rights guaranteed by the Fourteenth Amendment of the United States Constitution, Article IX § 1 of the North Carolina Constitution and the McKinney-Vento Act, 42 U.S.C. §§ 11431-11435, and Dispute Resolution Process for Homeless Students § G.S. 115C-12; 115C-366 and the regulations promulgated thereunder.

70.     All Defendants have acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Defendants' acts described herein were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983 and by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Defendants have conspired amongst themselves.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

14

70.     Plaintiffs hereby repeat and incorporate by reference each of the allegations in the foregoing paragraphs set forth above.

71.     K.L.(g), A.B., and Z.B. seek a temporary restraining order to prohibit Defendants from dis- enrolling Plaintiffs in their schools of origin, permitting them to attend school in the District pending full resolution of this dispute in accordance with the pendency provision of the McKinney-Vento Act as set forth in 42 U.S.C. § 11432(g)(3)(E)(i), and to provide Plaintiffs with timely school bus or other safe and adequate transportation to their schools of origin for so long as they continue to be homeless as defined in the McKinney-Vento Act.

## REQUEST FOR PRELIMINARY INJUNCTION

72.     Plaintiffs hereby repeat and incorporate by reference each of the allegations in the foregoing paragraphs set forth above.

73.     K.L.(g), A.B., and Z.B. seek a preliminary injunction to prohibit Defendants from dis-enrolling Plaintiffs in their schools of origin, permitting them to attend school in the District pending full resolution of this dispute in accordance with the pendency provision of the McKinney- Vento Act as set forth in 42 U.S.C. § 11432(g)(3)(E)(i), and to provide Plaintiffs with timely school bus or other safe and adequate transportation to their schools of origin for so long as they continue to be homeless as defined in the McKinney-Vento Act.

## REQUEST FOR PERMANENT INJUNCTION

74.     Plaintiffs hereby repeat and incorporate by reference each of the allegations

15

in the foregoing paragraphs set forth above.

75.    K.L.(g), A.B., and Z.B. seek a permanent injunction mandating Defendants' compliance with the McKinney-Vento and NC Homeless Education Plan

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all persons similarly situated, pray that this Court:

A.    Immediately grant a temporary restraining order and preliminary injunction compelling the Defendants to maintain Plaintiffs' enrollment in their schools of origin, reinstate Plaintiff child A.B. in school activities (cheerleading) and provide Plaintiffs with transportation to and from their schools of origin; Remove absences from A.B and Z.B.'s record for time related to McKinney-Vento and

B.    Appoint Plaintiff an attorney at Defendants expense;

C.    Grant a permanent injunction against Defendants;

D.    Award such other and further relief as the Court may deem appropriate

16

## CERTIFICATE OF SERVICE

I hereby certify that I have this date caused to be forwarded via email filing, a copy of the

following document: Plaintiffs' First Verified Petition, to:

> Lisa Phillips State Coordinator for the Education
> of Homeless Students, North Carolina
> Department of Public Instruction
> VIA EMAIL @ lisa.phillips@dpi,nc.
>
> Gaston County School District
>
> Marty Starnes, Atorney
> Gaston County School Board Attorney
> VIA EMAIL @ mbstarnes@gaston.k12.nc.us

Dated and Signed:

*Karen Sayed* 1/26/24
2334 Atticus Ave
Gastenia NC 28054